Christopher J. Hamner, Esq. (SBN 197117)
**HAMNER LAW OFFICES, APLC**
26565 West Agoura Road, Suite 200
Calabasas, California 91302
Telephone: (888) 416-6654
E-mail: chramner@hamnerlaw.com

Attorneys for Plaintiff BRANDON GREEN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BRANDON GREEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DUFFY, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF TRANSPORTATION,<br><br>Defendant. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. Disability Discrimination (Rehabilitation Act)<br>2. Failure to Accommodate and Engage in the Interactive Process (Rehabilitation Act)<br>3. Retaliation (Title VII)<br>4. Retaliation (Rehabilitation Act)<br>5. Hostile Work Environment<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This action arises from the Federal Aviation Administration's refusal to accommodate a cancer patient and its retaliation against him for testifying in a coworker's EEO complaint.

2. Plaintiff Brandon Green has worked as an air traffic controller at the Los Angeles Air Route Traffic Control Center for approximately thirteen years. He has lived with cancer since 2004. The FAA had knowledge of this. The FAA approved his leave under the Family and Medical Leave Act continuously for years.

3. In December 2023, Plaintiff testified as a witness in another employee's EEO complaint. That same month, Operations Manager Sarah Fletcher moved his regular days off. The change disrupted his cancer treatment, cost him overtime, and forced him to reschedule medical appointments. For nearly three years the FAA refused every request to restore his schedule. It questioned his protected leave. It issued him memoranda for using it. It suspended him without pay.

4. The Department of Transportation's own Final Agency Decision concedes that Plaintiff is an individual with a disability, that he is qualified, and that he established a prima facie case of reprisal. The Agency nevertheless found no discrimination against itself. Plaintiff has exhausted his administrative remedies. He now seeks relief from this Court.

## II. PARTIES

5. Plaintiff Brandon Green is, and at all relevant times was, an individual residing in the State of California.

6. Plaintiff is employed by the Federal Aviation Administration as an Air Traffic Control Specialist, WG-2152-12, at the Los Angeles Air Route Traffic Control Center in Palmdale, California ("ZLA").

7. Defendant Sean Duffy is the Secretary of the United States Department of Transportation. He is sued in his official capacity only. The FAA is an operating administration of the Department. The head of the department is the proper defendant under 42 U.S.C. section 2000e-16(c) and 29 U.S.C. section 794a(a)(1). The Department, including the FAA, is referred to below as the "Agency."

8. At all relevant times Plaintiff was an employee of the Agency. The Agency was his employer.

9. At all relevant times Sarah Fletcher was an Operations Manager in Area F at ZLA and Plaintiff's second level supervisor. Bryan Dreher and Michael Hall were Plaintiff's first level supervisors. Toninett Harrison and Jon Ralph were Operations Managers. Guy Casey was an Operations Supervisor. Each acted within the course

and scope of Agency employment. Their acts and knowledge are attributable to the Agency.

## III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. sections 1331 and 1343(a)(4). This action arises under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. section 791, as enforced through 29 U.S.C. section 794a(a)(1), and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-16.

11. Venue is proper in this District and in the Western Division. The unlawful employment practices alleged here occurred at ZLA in Palmdale, Los Angeles County, California. Plaintiff would continue to work there but for those practices. 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1391(e).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. On December 13, 2023, the Agency issued Plaintiff a memorandum changing his regular days off effective January 28, 2024. On January 3, 2024, Plaintiff contacted an EEO Counselor. That contact was within 45 days of the Agency's action. 29 C.F.R. § 1614.105(a)(1).

13. On April 12, 2024, Plaintiff filed a formal complaint of discrimination with the Department of Transportation Office of Civil Rights, Agency No. 2024-00117-FAA-06. The complaint alleged discrimination based on disability (cancer) and reprisal for prior EEO activity, and harassment.

14. On May 9, 2024, the Agency accepted the complaint for investigation. It framed the claims as follows: (1) on or about December 13, 2023, management issued Plaintiff a letter changing his days off, which denied reasonable accommodation for a known disability; (2) from on or about January 28, 2024, to present, management has not approved Plaintiff's scheduling request to retain or return to his prior schedule; and (3) prior to and since December 13, 2023, the Agency failed to accommodate Plaintiff's disability by failing to allow FMLA leave for treatment, by cancelling leave

for treatment without a showing of undue hardship, and by failing to participate in the interactive process in good faith.

15. The Agency investigated from May 21, 2024, through August 16, 2024, and issued a Report of Investigation on October 4, 2024. On October 22, 2024, Plaintiff requested a hearing before an EEOC Administrative Judge.

16. The Agency then conducted a supplemental investigation from November 20, 2025, through December 14, 2025, and issued a Supplemental Report of Investigation on December 18, 2025. The supplemental investigation covered Plaintiff's FMLA leave, the Agency's denial of that leave in late 2025, and the status of his reasonable accommodation request.

17. On August 25, 2026, the matter was remanded to the Agency for a final decision under 29 C.F.R. section 1614.110(b). The Agency issued a Final Agency Decision finding no discrimination on about October 31, 2026.

18. This action is timely. Plaintiff files it within ninety days of receipt of the Final Agency Decision. 29 C.F.R. § 1614.407(a). In addition, more than 180 days passed between the filing of the formal complaint and the Final Agency Decision, and Plaintiff may sue on that basis as well. 29 C.F.R. § 1614.407(b).

19. Plaintiff has exhausted his administrative remedies and satisfied every administrative prerequisite to this action. Every claim alleged here was raised in, was investigated within, or is like or reasonably related to the claims in the formal complaint. Each act alleged after April 12, 2024, continues the conduct complained of in the formal complaint, was investigated in the supplemental investigation, or was taken in retaliation for the complaint itself.

## V. GENERAL ALLEGATIONS

### A. Plaintiff and His Disability

20. Plaintiff has worked as an Air Traffic Control Specialist at ZLA for approximately thirteen years. The Agency has never identified a performance problem in his work.

21. In 2004, Plaintiff was diagnosed with Stage 4 liver cancer. The condition is lifelong and chronic. Cancer substantially limits normal cell growth, and it limits other major life activities and major bodily functions. 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(j)(3)(iii).

22. Plaintiff holds a medical waiver that allows him to work as a controller. He must renew the waiver every year with a medical certification that he can perform his duties. He has renewed it every year. He performs the essential functions of his position with or without accommodation.

23. Plaintiff treats at the Norris Cancer Hospital, Keck Medicine of USC, in Los Angeles. His treatment and its side effects require scheduled appointments and time away from work. Plaintiff scheduled his treatment around his regular days off.

24. Plaintiff kept every level of his supervisory chain informed of his condition and his medical status. The Agency approved him for FMLA leave for many years. The Agency renewed that approval on March 23, 2025. Operations Manager Ralph confirmed that Plaintiff used FMLA leave often.

25. The Agency recognized Plaintiff as an individual with a disability based on his diagnosis. The Final Agency Decision so finds. The Agency's own EEO Specialist reviewed his physician's recommendations in 2025 and recorded them as a reasonable accommodation request.

26. Fletcher knew of Plaintiff's cancer. She knew of his FMLA approval. She knew of his medical appointments and procedures. Plaintiff had kept her informed of each.

**B. Plaintiff's Protected Activity**

27. In December 2023, Plaintiff participated as a witness in an EEO complaint filed by another employee. Fletcher was involved in that matter and knew of Plaintiff's participation. The Final Agency Decision finds that Fletcher was aware of his EEO activity.

28. Before Plaintiff testified, his dealings with Fletcher were cordial. After she learned that he had testified, her attitude toward him changed.

29. On January 3, 2024, Plaintiff contacted an EEO Counselor. On April 12, 2024, he filed a formal complaint. On October 22, 2024, he requested a hearing. In 2025 he requested a reasonable accommodation based on his disability.

**C. The Agency Changes Plaintiff's Days Off**

30. Controllers at ZLA bid each year for shifts and regular days off. Seniority controls the bid. For 2024, Plaintiff bid and held Sunday and Monday as his regular days off. He arranged his medical care, his family obligations, and his overtime around that schedule.

31. On December 13, 2023, Fletcher drafted and signed a memorandum reassigning Plaintiff's regular days off from Sunday and Monday to Monday and Tuesday, effective January 28, 2024. Dreher issued it to Plaintiff.

32. The memorandum stated that the Agency found an imbalance on Monday and Tuesday days off, solicited volunteers under Article 46 of the Agreement between the National Air Traffic Controllers Association and the FAA, received none, and selected Plaintiff because he had the lowest seniority among those with Sunday and Monday days off.

33. Plaintiff did not ask for the change. He did not volunteer. Use of Article 46 to move a controller's days off was not a common practice at ZLA.

34. Plaintiff was not the least senior controller. He was among the most senior in his area during the bidding process. Employees with less seniority held Sunday and Monday, Friday and Saturday, and Saturday and Sunday days off. Those schedules had a greater number of certified controllers than the schedule the Agency moved Plaintiff onto. A coworker has attested to these facts under penalty of perjury.

35. Fletcher stated that six employees had their areas or days off revised. Four received letters. Plaintiff is informed and believes that he was the only affected employee who had cancer, who had approved FMLA leave for treatment, and who had testified in an EEO complaint in which Fletcher was involved.

36. Fletcher issued the memorandum in the same month that Plaintiff testified. She issued it while knowing that Plaintiff relied on his schedule to attend cancer treatment.

**D. The Effect on Plaintiff's Treatment and Pay**

37. After the change, management repeatedly scheduled Plaintiff for overtime that conflicted with his treatment. It cancelled overtime on days when he could work. It refused his requests to change shifts. Fletcher, Dreher, Hall, Harrison, and other management personnel took part in these decisions. Plaintiff is informed and believes that Fletcher directed them.

38. Plaintiff lost overtime opportunities that should have been scheduled to him on the following dates: December 15, 2023; February 6, April 15, April 22, May 6, May 20, August 12, September 23, September 30, October 21, December 9, and December 30, 2024; and January 15, 2025.

39. Plaintiff was forced to miss overtime shifts on the following dates because they conflicted with treatment: February 6, February 13, March 5, March 12, March 19, April 9, April 23, April 30, May 13, May 20, May 27, June 3, June 10, July 9, July 16, July 27, July 30, August 27, September 3, December 3, December 10, December 17, December 24, and December 31, 2024; and January 7 and January 14, 2025.

40. Plaintiff was forced to move treatment appointments at Keck Medicine of USC from the morning to the evening, because the Agency would not correct his schedule. The affected dates are February 6, February 13, March 5, March 12, March 19, April 9, April 23, April 30, June 3, June 10, July 9, July 16, July 23, July 30, August 27, September 3, December 3, December 10, and December 17, 2024; and January 7 and January 14, 2025.

**E. The Agency Refuses to Restore Plaintiff's Schedule**

41. From January 28, 2024, to the present, Plaintiff has asked the Agency, orally and in writing, to restore his prior schedule. He made these requests to Fletcher, Dreher, and Hall. He renewed them during the bidding process for 2025. He explained that he had recurring medical appointments on the days he was assigned to work.

42. The Agency did not approve a single request. It gave no explanation. Dreher testified that Plaintiff asked to change his days off, and that the collective bargaining agreement does not allow a change outside the order of seniority. Hall testified that the way to change a day was to swap with another controller. Neither offered Plaintiff any accommodation.

43. Fletcher testified that she received no scheduling requests from Plaintiff. The record contradicts that testimony. Fletcher acknowledged that Harrison handled a leave problem Plaintiff raised, and Dreher testified that Plaintiff raised scheduling problems with him.

44. Fletcher also testified that Plaintiff could have returned to his former days off by working a rotation of swing, day, and mid shifts. The Agency never offered that option to Plaintiff. It never met with him to discuss any option.

45. In 2025, Plaintiff's physician recommended that he be assigned to the day shift, be given frequent breaks, and be accommodated in performing his essential functions. Fletcher submitted a reasonable accommodation request on Plaintiff's behalf on or about August 19, 2025. On August 25, 2025, Plaintiff notified the Agency of his need for accommodation. The Agency did not respond until on or about December 11, 2025. As of the supplemental investigation, the Agency's EEO Specialist reported that no determination had been made.

**F. The Agency Interferes With Plaintiff's Protected Leave**

46. For years the Agency approved Plaintiff's FMLA leave without question. After Plaintiff testified in the EEO matter, Fletcher began to question his FMLA requests for specific dates. She demanded that he justify them. She told him that the leave would be denied if he did not. She required him to produce FMLA documentation every fourteen days, although the Agency had already approved his FMLA participation for a year.

47. On or about November 30, December 1, and December 4, 2025, Fletcher denied Plaintiff's FMLA requests. The Agency's leave system records the denials. Plaintiff

was then ill and under treatment. Keck Medicine of USC certified that he could not work from November 9 through November 12, 2025, because of the side effects of his treatment. A physician at Facey Medical Group saw him on November 30, 2025, and excused him from work until December 7, 2025.

48. Fletcher testified that she was not aware that Plaintiff is a person with a disability of any kind. She testified that she understood his FMLA leave to relate to childcare. Both statements are false. The Agency's EEO Specialist and the Final Agency Decision recognize his disability. Fletcher herself submitted a reasonable accommodation request for him on August 19, 2025. Ralph knew that Plaintiff had been approved for FMLA leave and that he used it often.

49. On December 14, 2025, Plaintiff called off work on FMLA leave. He had leave available. On December 15, 2025, the Agency changed his sick leave for December 14 to absence without leave. The Agency then suspended him without pay for calling off.

50. Plaintiff also was hospitalized during this period. He gave the Agency a physician's note from Henry Mayo Hospital that confirmed his admission. Plaintiff is informed and believes that Fletcher believed he called off on purpose and acted on that belief.

**G. The Agency Escalates After Plaintiff Files His Complaint**

51. On April 24, 2025, the Agency issued an Article 46 solicitation for controllers to move to another area. Plaintiff applied. On May 6, 2025, the Agency told him he was the most senior applicant and had been selected. The selection carried a change of days off. Plaintiff began to plan his life and his treatment around it.

52. On May 6, 2025, the same day, Operations Supervisor Guy Casey issued Plaintiff a memorandum titled "Employee Leave Expectation." The memorandum accused Plaintiff of what "could be considered a pattern of abuse" of sick leave, and it cited leave taken in conjunction with regular days off, overtime, and annual leave. It

referred Plaintiff to the Employee Assistance Program. Plaintiff was a cancer patient with approved FMLA leave.

53. On August 7, 2025, the Agency told Plaintiff that the Article 46 solicitation was cancelled. It replaced him with Michael Penalosa, a controller who transferred to ZLA from another facility in May 2025, after Plaintiff had been selected. A coworker has attested that the Agency negated Plaintiff's transfer after its effective date had passed, and that the stated reason was Plaintiff's use of sick leave on a midnight shift on July 20, 21, and 22, 2025, while he was undergoing cancer treatment. Plaintiff is informed and believes that Fletcher had a direct hand in the cancellation.

54. On October 23, 2025, management counseled Plaintiff about his leave. On November 6, 2025, Ralph issued Plaintiff a memorandum titled "Sick Leave Restriction." The memorandum accused Plaintiff of abuse of leave. It cited sick leave on October 26, November 2, and November 3, 2025. It required Plaintiff to provide a medical certificate for every future absence for up to six months, or be charged absence without leave. It warned that discipline could include removal from federal service.

55. Three days after the Sick Leave Restriction issued, Plaintiff was unable to work from November 9 through November 12, 2025, because of the side effects of his treatment at Keck Medicine of USC.

56. After Plaintiff filed his EEO complaint, the Agency also subjected him to repeated investigations. It suspended him for fourteen days without pay on an allegation that he falsified his time card. Its own investigation showed that the operations manager signs employees in and that other employees saw Plaintiff at work. The Agency did not follow the penalty table in its Human Resource Policy Manual. Plaintiff lost an entire paycheck.

**H. The Agency's Explanation Is Pretext**

57. The Agency says it moved Plaintiff's days off under Article 46 because he had the least seniority. That explanation is false. Plaintiff was among the most senior

controllers in his area. Less senior controllers kept their days off. The days Plaintiff was moved to had fewer certified controllers than the days he left.

58. The Agency says Fletcher did not know Plaintiff had a disability. That explanation is false. The Agency approved his FMLA leave for years, its EEO Specialist recognized his disability, and Fletcher herself submitted his accommodation request.

59. The Agency says Plaintiff never asked for accommodation before 2025. That position ignores the facts. The Agency knew of Plaintiff's cancer and of his need for treatment time. The Agency approved FMLA leave for it. An employer on notice of a disability and a need for accommodation must engage in the interactive process. The Agency did not.

60. Fletcher's treatment of Plaintiff changed after he testified. She had never questioned his FMLA leave before. She questioned it afterward. Management began citing his leave as abuse after he filed his EEO complaint. Each step followed the last, and each fell on a controller the Agency knew was a cancer patient.

61. The Final Agency Decision confirms the facts that matter. It finds that Plaintiff is disabled. It finds that he is qualified. It finds that he engaged in protected activity, that Fletcher knew of it, that he suffered adverse actions, and that those actions followed his protected activity. It finds a prima facie case of reprisal.

**I. Plaintiff's Damages**

62. As a direct and proximate result of the Agency's conduct, Plaintiff has lost overtime pay and wages, including pay lost to suspension. He has lost leave. He has suffered emotional distress, anxiety, humiliation, and loss of enjoyment of life, during treatment for cancer. He has incurred other pecuniary losses. The amounts will be proven at trial.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Disability Discrimination in Violation of the Rehabilitation Act (29 U.S.C. § 791)

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above.

64. Section 501 of the Rehabilitation Act prohibits discrimination against federal employees on the basis of disability. 29 U.S.C. § 791(f) incorporates the standards of Title I of the Americans with Disabilities Act.

65. Plaintiff is an individual with a disability. He is qualified to perform the essential functions of his position with or without reasonable accommodation. The Agency knew of his disability.

66. The Agency subjected Plaintiff to adverse employment actions. It changed his regular days off. It refused to restore them. It cancelled or denied his protected leave. It denied him overtime. It cancelled his selection for transfer. It issued him memoranda and suspended him without pay.

67. The Agency took those actions because of Plaintiff's disability. The Agency treated similarly situated employees without Plaintiff's disability more favorably. Less senior controllers kept their days off. Other employees in similar positions requested and received schedule adjustments. Plaintiff did not.

68. The Agency's stated reasons are pretext, as alleged above.

69. As a direct and proximate result, Plaintiff suffered the damages alleged above. Plaintiff is entitled to relief under 29 U.S.C. § 794a(a)(1) and 42 U.S.C. § 1981a(a)(2).

## SECOND CAUSE OF ACTION

### Failure to Accommodate and to Engage in the Interactive Process in Violation of the Rehabilitation Act (29 U.S.C. § 791)

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above.

71. The Rehabilitation Act requires a federal agency to make reasonable accommodation for the known limitations of a qualified individual with a disability,

absent undue hardship. It requires the agency to engage in a timely, good faith interactive process.

72. Plaintiff is a qualified individual with a disability. The Agency knew of his cancer, his treatment, and his need for time to attend treatment. Plaintiff requested accommodation by seeking to keep or return to his prior schedule and by requesting FMLA leave for treatment. In 2025, Plaintiff and his physician requested a day shift schedule and frequent breaks.

73. The Agency failed to accommodate Plaintiff. It changed his days off. It refused every request to restore them. It cancelled or denied leave for treatment without showing undue hardship. It did not respond to his 2025 accommodation request for more than three months and has not decided it.

74. The Agency failed to engage in the interactive process. It never met with Plaintiff. It never discussed alternatives. It offered no option. It treated his notice of disability as irrelevant until he made a formal request.

75. Accommodating Plaintiff would not have imposed an undue hardship. He worked his prior schedule for years. Other controllers held the same days off and shifts.

76. As a direct and proximate result, Plaintiff suffered the damages alleged above.

## THIRD CAUSE OF ACTION

### Retaliation in Violation of Title VII (42 U.S.C. §§ 2000e-3(a), 2000e-16)

77. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above.

78. Title VII prohibits retaliation against a federal employee who participates in an EEO proceeding or opposes discrimination.

79. Plaintiff engaged in protected activity. In December 2023, he participated as a witness in an EEO complaint. Fletcher knew of his participation.

80. After that activity, the Agency took actions that would dissuade a reasonable employee from engaging in protected activity. It changed Plaintiff's days off, refused

to restore them, scrutinized and denied his leave, cost him overtime, issued him leave memoranda, cancelled his transfer, and suspended him without pay.

81. The protected activity caused those actions. The first action followed the protected activity within weeks. Fletcher's treatment of Plaintiff changed after she learned of it. The Agency's explanation is pretext. The Final Agency Decision finds a prima facie case of reprisal.

82. As a direct and proximate result, Plaintiff suffered the damages alleged above.

**FOURTH CAUSE OF ACTION**

**Retaliation in Violation of the Rehabilitation Act (29 U.S.C. § 791; 42 U.S.C. § 12203)**

83. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above.

84. The Rehabilitation Act, through 29 U.S.C. section 791(f) and 42 U.S.C. section 12203, prohibits retaliation against an employee who opposes disability discrimination, requests reasonable accommodation, or participates in a charge or proceeding.

85. Plaintiff engaged in protected activity. He requested accommodation and complained of the denial of accommodation. On January 3, 2024, he contacted an EEO Counselor. On April 12, 2024, he filed a formal complaint of disability discrimination. On October 22, 2024, he requested a hearing. In 2025, he requested reasonable accommodation through his physician and notified the Agency.

86. After that activity the Agency took materially adverse actions. It issued the May 6, 2025 leave memorandum and the November 6, 2025 Sick Leave Restriction. It cancelled his selection for transfer. It denied his FMLA leave. It changed his leave to absence without leave. It investigated him repeatedly. It suspended him without pay.

87. The protected activity caused those actions. The Agency's explanations are pretext. The Agency's own records show that the leave it cited as abuse was taken during cancer treatment.

88. As a direct and proximate result, Plaintiff suffered the damages alleged above.

## FIFTH CAUSE OF ACTION

**Hostile Work Environment in Violation of the Rehabilitation Act and Title VII**

**(29 U.S.C. § 791; 42 U.S.C. § 2000e-16)**

89. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above.

90. Plaintiff was subjected to unwelcome conduct because of his disability and because of his protected EEO activity.

91. The conduct was severe or pervasive. It extended from December 2023 through the present. It included the schedule change, the refusal to restore it, repeated questioning and denial of protected leave, demands for documentation every fourteen days, the leave memoranda, the cancellation of Plaintiff's transfer, repeated investigations, and a suspension without pay. It unreasonably interfered with Plaintiff's work and with his medical care.

92. A reasonable person in Plaintiff's position would find that environment hostile and abusive. Plaintiff did find it so.

93. The harassment was carried out by supervisors and managers with authority over Plaintiff. It culminated in tangible employment actions, including loss of pay. The Agency is vicariously liable.

94. As a direct and proximate result, Plaintiff suffered the damages alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. A declaration that the Agency's acts violated the Rehabilitation Act and Title VII;
2. Back pay, including lost overtime and wages lost to suspension, with interest, according to proof;
3. Restoration of all leave Plaintiff was forced to use or lose;
4. Compensatory damages for emotional distress, humiliation, and other nonpecuniary losses, in an amount to be proven at trial, as permitted by 42 U.S.C. § 1981a;

5. An order restoring Plaintiff to his prior regular days off, or to another schedule that reasonably accommodates his disability, and requiring the Agency to engage in the interactive process in good faith;
6. An order directing the Agency to remove from Plaintiff's personnel and leave records the May 6, 2025 memorandum, the November 6, 2025 Sick Leave Restriction, the absence without leave charge, and the suspensions;
7. An injunction prohibiting further discrimination and retaliation against Plaintiff;
8. Reasonable attorney's fees and costs under 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 794a(b);
9. Prejudgment and post judgment interest as permitted by law; and
10. Such other and further relief as the Court deems just and proper.

Dated: November 19, 2026

**HAMNER LAW OFFICES, APLC**

/s/ Christopher J. Hamner

________________________________

Christopher J. Hamner, Esq.
Attorney for Plaintiff